# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **United States of America,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Criminal Action Number** |
| ) | **12-00268-15-CR-W-DGK** |
| **Jose Alberto Arvizu,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Presently pending before the Court is the MOTION TO SUPPRESS STATEMENTS [Doc. 441] filed by defendant Jose Alberto Arvizu ("Arvizu") on October 21, 2014. On February 11, 2015, the undersigned held an evidentiary hearing on Arvizu's motion. Arvizu was present and represented by his counsel, Jon Justin Johnston. The government was represented by Assistant United States Attorney Bruce Rhoades. At the evidentiary hearing, testimony was provided by a single witness: Detective Loran Freeman with the Independence Missouri Police Department. Additionally, the following exhibits were admitted into evidence

| Number | Description |
|---|---|
| Gov't #1 | Miranda waiver |
| Gov't #2 | Statement |
| Gov't #3 | Booking release |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned recommends denial of Arvizu's MOTION TO SUPPRESS STATEMENTS and submits the following proposed findings of facts and proposed conclusions of law.

# PROPOSED FINDINGS OF FACT

1. Loran Freeman is a detective with the Independence Missouri Police Department assigned to the Career Criminal Unit. Tr. at 5-6.

2. As part of Det. Freeman's duties, he was involved in the criminal investigation that ultimately led to Arvizu's arrest and indictment. Tr. at 6.

3. On February 15, 2012, at approximately 4 p.m., Arvizu was arrested after he encountered law enforcement officers executing a search warrant on a residence stemming from an investigation involving a target named Damon Schultz. Tr. at 11-12, 18.

4. As part of that investigation, on February 16, 2012, at approximately 11:45 a.m., Det. Freeman obtained a video/audio statement from Arvizu. Tr. at 6-8, 13; Gov't #2.

5. Det. Freeman removed Arvizu's handcuffs prior to the start of the interview. Tr. at 14; Gov't #2.

6. Prior to taking the statement, Det. Freeman told Arvizu:

> *This thing that happened yesterday . . . You have to assume that it didn't just start yesterday. Okay? You have to assume, probably, that we've been around awhile. . . Watching shit, following people, talking to people, making other arrests and shit like that.*
>
> *So . . . here's the deal. I'm willing to sit here and have a very honest conversation with you about some things, so long as you're going to be honest with me. Okay? There's things that I know, and there's things that I'm going to ask you, and there's things that I'm going to ask you and I already know the answer just to check you, see if you're going to be straight with me... If you're going to lie to me and bullshit me and all that man, I'd just as soon get up and walk out of here, not waste your time or mine.*

Tr. at 16; Gov't #2.

7. Arvizu then asked if he was being charged with anything and Det. Freeman responded:

> *Not right now. Not today. One thing I can guarantee you, is that regardless of what you and I talk about right now, with the exception of murder, you're going to be able to walk out of here today.*

Gov't #2.

8. Det. Freeman then discussed with (and read to) Arvizu his constitutional rights under Miranda. Tr. at 6, 16; Gov't #2.

9. Following the discussion of the Miranda rights, Arvizu signed a written waiver of those rights and agreed to speak with Det. Freeman. Tr. at 6, 16; Gov't #1.

10. After Arvizu avoided directly answering any questions about his participation in drug trafficking by Damon Schultz, Det. Freeman told Arvizu:

> *Look. . . you're in a position to be a really good witness. And here's the thing: When it comes to the federal system. . . there's two kinds of people; the ones who talk and cooperate, and the ones who wish they had. Now, I'm in a position to make recommendations to the U.S. Attorney in how he charges this case when that day comes. Typically, he listens to the things that we suggest. You and I have a straightforward, honest conversation here, things go well for you, because I will make every recommendation that he be as lenient with you as he possibly can, in exchange for your cooperation and potentially testimony as a witness.*

Tr. at 18-21; Gov't #2.

11. After Arvizu expressed concerns about testifying, Det. Freeman told him:

> *The chances of you having to stand up in a federal court... Man, you got a better chance of winning the lottery. I need to know that you're at least willing to do it. I need you to give me an honest account of all the dope dealing you've seen Damon do, of all the dope dealing you have done, and about some other shit too. So, let's talk about those things.*

Gov't #2.

12. Thereafter, Arvizu made incriminating statement relative to his alleged direct participation in drug trafficking. Tr. at 23.-24.

13. The video/audio statement obtained by Det. Freeman from Arvizu is approximately 45 minutes. Tr. at 10; Gov't #2.

14. Arvizu was released from police custody about six minutes following the conclusion of the interview with Det. Freeman. Tr. at 10-11; Gov't #3.

3

## PROPOSED CONCLUSIONS OF LAW

In his motion to suppress, Arvizu seeks the suppression of all incriminating statements he made to Det. Freeman, arguing that the statement were obtained in violation of his constitutional rights. With regard to Arvizu's video/audio statement to Det. Freeman, the Fifth Amendment of the United States Constitution commands that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. With regard to the Fifth Amendment, the Supreme Court has found:

> The essence of this basic constitutional principle is the requirement that the [government] which proposes to convict and punish an individual produce the evidence against him by the independent labors of its officers, not by the simple, cruel expedient of forcing it from his own lips.

*Estelle v. Smith*, 451 U.S. 454, 462, 101 S.Ct. 1866, 1872 (1981). However, as the Supreme Court has made clear on numerous occasions, the right against self-incrimination does not prohibit any and all statements made by suspects to law enforcement officers from being admissible in a criminal proceeding. For example:

> [The Fifth Amendment] does not preclude a witness from testifying <u>voluntarily</u> in matters which may incriminate him, . . . for those competent and freewilled to do so may give evidence against the whole world, themselves included. . . . Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable.

*United States v. Washington*, 431 U.S. 181, 186-87, 97 S.Ct. 1814, 1818 (1977) (*emphasis added*). The touchstone of such Fifth Amendment analysis is voluntariness. *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 2331 (2000) ("We . . . continue to exclude confessions that were obtained involuntarily.").

With regard to statements made by a suspect during custodial interrogation by law enforcement, the Supreme Court, in the landmark case of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), enunciated a special test for ascertaining voluntariness. The reason for such

4
Case 4:12-cr-00268-DGK   Document 548   Filed 06/17/15   Page 4 of 8

special treatment stems from the Supreme Court's recognition that custodial interrogations are inherently coercive. *Dickerson*, 530 U.S. at 435, 120 S.Ct. at 2331; *New York v. Quarles*, 467 U.S. 649, 654, 104 S.Ct. 2626, 2630 (1984). Indeed, in *Miranda,* the Supreme Court observed that custodial interrogations, by their very nature, generate "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624. Consequently,

> To combat this inherent compulsion, and thereby protect the Fifth Amendment privilege against self-incrimination, *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused.

*Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 1140 (1986). These procedures, now almost universally familiar, include fully apprising a suspect of the prosecution's intention to use his statements to secure a conviction and informing him of his rights to remain silent and to have counsel present if he so desires. *Miranda*, 384 U.S. at 468-70, 86 S.Ct. at 1624-26.

Despite the inherently coercive nature of custodial interrogations, it is well settled that a criminal suspect may waive the rights contained in the *Miranda* warnings "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1628. However, "[a] waiver of *Miranda* rights is invalid if, in the totality of the circumstances, the accused's will was overborne." *United States v. Holloway*, 128 F.3d 1254 (8th Cir.1997); *see also United States v. Caldwell*, 954 F.2d 496, 505 (8th Cir.1992) (waiver of *Miranda* rights is determined under totality of the circumstances and in light of entire course of police conduct).

In *United States v. Boyd*, 180 F.3d 967 (8th Cir.1999), the Eighth Circuit explained how to determine whether a waiver of *Miranda* rights is valid:

> The determination of whether an accused has knowingly and voluntarily waived his *Miranda* rights depends on all the facts of each particular case. The circumstances include the background, experience, and conduct of the accused. The government has the burden of proving that the defendant voluntarily and knowingly waived his rights.

5

*Id*. at 977 (*internal citations omitted*); *see also United States v. Barahona*, 990 F.2d 412, 418 (8th Cir.1993) (government bears burden of proving by preponderance of evidence that defendant knowingly, voluntarily, and intelligently waived his rights).

Thus, an inquiry into whether a suspect's *Miranda* rights have been waived "has two distinct dimensions." *Moran*, 475 U.S. at 421, 106 S.Ct. at 1141. The Court has explained:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Id*. at 421, 106 S.Ct. at 1141. The *Moran* court further noted that "[o]nly if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id*. (*quoting Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2571 (1979)). These principles subsequently have been summarized by lower courts. For instance in *Holman v. Kemna*, 212 F.3d 413 (8th Cir. 2000), the Eighth Circuit found:

> A waiver is voluntary if it is the product of a free and deliberate choice rather than intimidation, coercion, or deception. A waiver is knowing and intelligent if it has been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Id*. at 420.

In this case, two matters are clear. First the video/audio statement obtained by Det. Freeman was custodial interrogation. Second, Arvizu did sign a waiver of his Miranda rights. Notwithstanding this latter fact, Arvizu argues that suppression of his statements is warranted because his statements were not voluntarily made, but were the product of false promises of leniency (buttressed by the implication of dire consequences if Arvizu did not cooperate).

After considering the totality of the circumstance surrounding the statement and after viewing the recording of the statement carefully, the Court rejects Arvizu's argument that his statements were involuntary. Arvizu did not appear to be impaired or intellectually limited. Det. Freeman did not threaten Arvizu physically nor raise his voice or use abusive language. The interview setting was not unnecessarily beyond what is to be expected from a post-arrest interview in a police station. Arvizu appeared to understand and comprehend his waiver of rights, Det. Freeman's questions, and the gravity of the situation.

Moreover, giving Arvizu the benefit of the doubt that Det. Freeman was making promises of leniency in order to obtain incriminating statement, this fact, alone, does not render Arvizu's statements involuntary. *Compare United States v. Santos–Garcia,* 313 F.3d 1073, 1079 (8th Cir. 2002) (noting that raised voices and promises of leniency do not render a confession involuntary); *United States v. Kilgore,* 58 F.3d 350, 353 (8th Cir. 1995) (even if defendant was confused and confessed to the crime on the mistaken belief that he had been promised leniency -- or even if he had been promised some form of leniency – this circumstance alone would not make the defendant's confession involuntary). This is particularly true where – as here – a defendant knowingly and intelligently waived his constitutional rights. *Compare United States v. Otters,* 197 F.3d 316, 318 (8th Cir.1999) (finding that a reading of *Miranda* weighs in favor of a finding of voluntariness even where promises of leniency have been made to a defendant).

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS STATEMENTS [Doc. 441] filed by defendant Jose Alberto Arvizu ("Arvizu") on October 21, 2014.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are

7

accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                           */s/ John T. Maughmer*
                                           **John T. Maughmer**
                                   **United States Magistrate Judge**